IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LAWRENCE ALEXANDER, | Case No. 2:08-cv-01817-JKS |
| Petitioner, | |
| vs. | MEMORANDUM DECISION |
| DERRAL G. ADAMS, Warden, | |
| Respondent. | |

Petitioner, Paul Alexander, a state petitioner proceeding through counsel, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Alexander is currently in the custody of the California Department of Corrections, incarcerated at the California State Prison, Corcoran, in Corcoran, California. Respondent has filed an answer, and Alexander has filed a traverse.

## STATEMENT OF THE FACTS

P.B. moved from Mexico to the United States in 1997 and met the defendant while working for the California Conservation Corps in 1997 or 1998. The two began a dating relationship and soon moved in together.

In January 1999, P.B.'s daughter, P.S.B., born in August, 1991, came to the United States to live with her mother. **n1** She moved in with Big P. and defendant in the Greenback Terrace Apartments in Citrus Heights (also referred to as the Birdcage apartment). Big P. was approximately four months pregnant with defendant's child at that time.

**n1** To avoid confusion, P.B. is referred to as "Big P.," and her daughter, P. S.B., is

referred to as "Little P." This nomenclature was used in the trial court; we intend no disrespect.

Between January 1999 and March 2002, Big P. worked varying schedules for different employers and, in 2001, also attended school to obtain her CNA license. **n2** When Little P. was not in school or at daycare, she was under the care of defendant.

**n2** Big P. did not work from May to mid-September 1999, when she took time off for maternity leave. Her son was born in July 1999. She was also unemployed for approximately two months in late-Spring of 2000.

In mid-July 2000, Big P., defendant and the two children moved into a house on Glenn Avenue. Little P. was enrolled in the fourth grade.

In mid-March 2002, Little P. reported to school officials that she had been molested by defendant. Citrus Heights Police Officer John Linke interviewed Little P. Little P. told Linke that she was six years old when the first incident occurred at the Birdcage Apartment. **n3** She was sleeping in her mother's bedroom when the defendant came in, lay on the bed next to her and put his hands on her "chest" under her clothes. He then pulled her pants off and placed his hand on her vagina. He first put his finger inside her vagina, then slid down and placed his mouth on her vagina. He eventually climbed on top of her and partially inserted his penis inside of her vagina. Little P. told Linke that she pretended to be asleep, but said, "Ouch" when he penetrated her, causing the defendant to jump up and stand by the bed, where Little P. observed him with his pants down and his penis erect. According to Little P., Big P. was not home at the time of the incident.

**n3** Little P. was 10 years old when she reported the incident in March 2002, which would have made her seven years old when the incident occurred.

Little P. also told Linke about four subsequent incidents during which defendant touched her vaginal area. She told Linke that she did not tell her mother about any of the incidents because she was afraid.

Little P. later testified at trial that another incident occurred at the Birdcage apartment, when defendant pushed her down to her knees, pulled down his pants and underwear, grabbed her head and pushed it towards his erect penis, forcing her to put it inside her mouth.

Defendant was arrested and charged by amended information with aggravated sexual assault of a child (rape - Count One), aggravated sexual assault of a child (oral copulation - Count Three), and 10 counts of lewd and lascivious acts on a child (Counts Two, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve), all counts being serious felonies within the meaning of section 1192.7, subdivision (c). Defendant entered a plea of not guilty to all counts.

Following a jury trial, defendant was found guilty of Counts One, Three, Five, Six and Seven. The jury found him not guilty of the remaining counts. Defendant moved for

a new trial, arguing ineffective assistance of counsel by virtue of his attorney's failure to allow him to testify at trial, as well as other alleged failures in representation during the course of the trial. The court denied defendant's motion and sentenced him to an indeterminate term of 15 years to life as to Count One, a consecutive 15-year-to-life term as to Count Three, a consecutive six-year term as to Count Five, and concurrent six-year terms as to Counts Six and Seven each, for an aggregate term of six years consecutive to 30 years to life in state prison.[1]

PROCEDURAL HISTORY

Following his conviction and the denial of his motion for a new trial, Alexander filed a timely motion for appeal with the California Court of Appeal raising the following issues: ineffective assistance of counsel; the trial court erred by denying Alexander's motion for a new trial; the trial court erred by disallowing argument before the jury on Alexander's failed attempt to invoke privilege, and; instructional error.  On July 12, 2007, the court denied Alexander's appeal in an unreported, reasoned decision.  On September 11, 2007, Alexander filed a Petition for Review in the California Supreme Court which was denied on November 14, 2007.

On August 5, 2008, Alexander filed a petition for a writ of habeas corpus in this Court. In his petition he raises three grounds for relief: 1) Alexander was denied his right to testify on his own behalf; 2) his trial counsel rendered ineffective assistance of counsel, and; 3)  the trial court should have *sua sponte* instructed Alexander on his right to testify, based on his trial counsel's ineffective performance.  Respondent does not claim that any of Alexander's grounds are procedurally barred, however, Respondent alleges that Alexander has not properly exhausted his third claim for relief.

---

[1] *People v. Alexander*, 2007 WL 2010993, 1-2 (Cal. App. 3rd Dist., 2007).  Under Antiterrorism and Effective Death Penalty Act of 1996, the determination of these facts is presumed to be correct, and Alexander has the burden of rebutting that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in §

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

of the relevant state-court decision."[3]  The holding must also be intended to be binding upon the

states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be objectively unreasonable, not just incorrect or erroneous.[6]  The Supreme Court has made clear

that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[7]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[9]  Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

     In applying this standard, this Court reviews the last reasoned decision by the state

court.[11]  State appellate court decisions that affirm a lower court's opinion without explanation

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

are presumed to have adopted the reasoning of the lower court.[12]   Under California's unique

habeas procedure, a defendant who is denied habeas relief in the superior court files a new

original petition for relief in the court of appeal.  If denied relief by the court of appeal, the

defendant has the option of either filing a new original petition for habeas relief or a petition for

review of the Court of Appeal's denial in the California Supreme Court.[13]   This is considered as

the functional equivalent of the appeal process.[14]  Under AEDPA, the state court's findings of

fact are presumed to be correct unless the petitioner rebuts this presumption by clear and

convincing evidence.[15]  This presumption applies to state trial courts and appellate courts alike.[16]

    When there is no reasoned state court decision denying an issue presented to the state

court and raised in a federal habeas petition, this Court must presume that the state court decided

all the issues presented to it and perform an independent review of the record to ascertain

whether the state court decision was objectively unreasonable.[17]  The scope of this review is for

clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of

---

[12] *Ylst*, 501 U.S. at 802-03.

[13] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[14] *Id.* at 222.

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[17] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

6

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[18]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[19]

## DISCUSSION

As noted above, Alexander has raised three grounds for relief, and Respondent contends that Alexander's third ground has not been properly exhausted.  This Court will address the claims in order and will address the issue of exhaustion in its discussion of Alexander's third ground.

## I.  Denial of the Right to Testify

Alexander claims that his Fifth, Sixth and Fourteenth Amendment rights were violated by both his counsel and the trial court because he was denied his right to testify on his behalf. Specifically, Alexander claims that he wanted to testify but that his trial counsel, Paul Chan, did nothing to effectuate his requests to testify.  With respect to the court, Alexander claims that the court should have made a *sua sponte* inquiry as to whether there was a conflict between Alexander and Chan as to whether Alexander would testify.

---

[18] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[19] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 784 -785 (2011).

<u>A.  Denial of the Right to Testify by Counsel</u>

Alexander claims that Chan deprived him of his right to testify by not informing Alexander that he had an absolute right to testify and then by not effectuating his repeated requests to testify.  This argument is the same substantive argument that Alexander raises in his ineffective assistance of counsel claim, therefore, this Court will discuss counsel's actions with respect to this issue in its discussion of Alexander's ineffective assistance of counsel claim.[20]

<u>B.  Denial of the Right to Testify by the Court</u>

 Alexander claims that the trial court had constructive notice that there was a conflict between Alexander and Chan concerning whether Alexander should testify.  This issue was raised on direct appeal, and the California Court of Appeal rejected it, finding,"the [trial] court was unaware that defendant wished to testify on his own behalf."[21]  This Court may only grant Alexander relief if this conclusion was contrary to clearly established federal law or involved an unreasonable determination of the facts.[22]

The right of an accused to testify in his own defense is well established and is a "constitutional right of fundamental dimension."[23]  The right stems from several provisions of the Constitution, including the Fourteenth Amendment's Due Process Clause, the Sixth

---

[20]  In his second ground Alexander claims that he received ineffective assistance of trial counsel party because Chan did not allow Alexander to testify on his own behalf despite the fact that Alexander had the right to testify and informed Chan of his desire to exercise that right. This is essentially the same argument he raises in his first ground.

[21]  *Alexander*, 2007 WL 2010993 at 2.

[22] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[23]  *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *see Rock v. Arkansas*, 483 U.S. 44, 51 (1987).

Amendment's Compulsory Process Clause, and the Fifth Amendment's privilege against self-incrimination.[24]   The right is personal, and "may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional."[25]

However, while waiver of the right to testify must be knowing and voluntary, it need not be explicit.[26]   A defendant is "presumed to assent to his attorney's tactical decision not to have him testify."[27]   The court has no duty to affirmatively inform defendants of their right to testify, or to inquire whether they wish to exercise that right.[28]   "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so."[29]   A defendant who wants to reject his attorney's advice and take the stand may do so "by insisting on testifying, speaking to the court, or discharging his lawyer."[30]   When a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives the right to testify.[31]   The record is clear that Alexander did not insist on testifying, speak to the court about his apparent concerns or attempt to discharge his counsel.

---

[24]   *Rock*, 483 U.S. at 51-52.

[25]   *Joelson*, 7 F.3d at 177.

[26]   *See id.*

[27]   *Id.*

[28]   *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir.1990); *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991).

[29]   *Joelson*, 7 F.3d at 177.

[30]   *Id.*

[31]   *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir.1993).

Nevertheless, Alexander contends that the trial court should have sensed that a conflict existed between Alexander and Chan regarding whether Alexander would testify.[32] As his first piece of evidence, Alexander claims:

> [T]he Honorable Judge Gregory M. Caskey provided testimony on the record that he had direct personal knowledge of trial counsel's response to Petitioner's request to testify:
>> THE COURT: For the record, let me try to describe the manner in which you (Chan) just stated that. He held his hands out in front of him and almost in a pleading fashion, I would say, Mr. Dudek.
>> (RT, volume 2 page 563, lines 1-4, ellipses added)[33]

This evidence is far from conclusive. In fact, after reading this passage, in context, it appears that Judge Caskey was simply describing for the record the mannerisms which accompanied Chan's statement. This does nothing to prove that Judge Caskey knew of a potential conflict between Alexander and Chan at the time of the trial.

Alexander next claims:

> The Court also testified that it recalled a specific date and time in which it directly observed Petitioner voice his desire to testify to trial counsel:
>> THE COURT: Counsel, it may be of some help to you, Chan. I'm looking at the clerk's minutes, and the Monday that we've been talking about is Monday, October 4th, and that's the day where the prosecution rested at 10:19 in the

---

[32] There is authority for the proposition that certain events may trigger a trial court's duty to inquire into a potential conflict between a defendant and his or her counsel. *Wood v. Georgia*, 450 U.S. 261, 262 (1981) ("The possibility of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further."); *see Slappy v. Morris*, 649 F.2d 718 (9th Cir. 1981), *cert. granted*, -- U.S. --, 102 S.Ct. 1748, 72 L.Ed.2d 160 (1982) (where a defendant's appointed counsel was absent with appendicitis, the trial court had a duty to inquire about the probable length of the public defender's unavailability.); *see also United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996) (When a defendant's motion for a new trial was based on ineffective assistance of trial counsel, and the court ordered an evidentiary hearing on the matter, requiring counsel to argue his own ineffective performance created an actual conflict and the court should have replaced him with new counsel).

[33] Traverse, p. 2.

morning. We then entertained your defense motion under 1118. We received jury instructions, ordered the defendant to return at 1:30. *And it was over that lunch hour that the question of whether you were going to put your client on was– that would have been when you had made that decision.*

        I do recall, and I will state this to help counsel, that it was at that time as I was walking to go to lunch, I recall specifically stepping out of the elevator and you, your client and I believe his sister or sisters, I know there was about–

**THE DEFENDANT:** One sister

**THE COURT:** One sister. There was a conversation right there by the elevator by the first floor of the Sacramento Courthouse, and of course I didn't try to listen to the conversation, but I was curious because obviously I knew everybody that was involved. So I recall specifically seeing you talk to them at that point, and that would have been Monday right around noon. So if that helps you focus your comments, that's the reason for my comment.

(RT, volume 2 page 558-559; lines: 6-28; 1-2, emphasis added)[34]

Again, Alexander markedly misstates the record.  This excerpt from the record indicates that after the prosecution rested, the court broke for lunch and during this time Chan and Alexander were expected to decide whether Alexander would testify on his behalf.  Shortly after breaking, Judge Caskey saw Chan, Alexander, and Alexander's sister having a conversation by the elevator; Judge Caskey did not listen to the conversation.  Seeing Chan and Alexander having a conversation in the courthouse would not place Judge Caskey on constrictive notice of the content of their conversation or indicate that the two were engaged in a deep conflict over whether Alexander would testify.  Because Alexander has failed to show that the decision of the California Court of Appeal was contrary to clearly established federal law or involved an unreasonable determination of the facts, he is not entitled to relief on this ground.[35]

---

[34]  Traverse, pp. 2-3.

[35]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

11

## II.  Ineffective Assistance of Counsel

In his second ground, Alexander claims his trial counsel rendered ineffective assistance of counsel.  Specifically, Alexander claims that he was denied effective assistance of counsel based upon his trial counsel's failure to: 1) secure Alexander's right to testify;  2) recall a witness for purposes of impeachment, and;  3) adequately cross-examine witnesses and elicit exculpatory evidence.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Alexander must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[36]  As noted above, "federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."[37]  Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below the *Strickland* standard."[38]  "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."[39]  It is

---

[36] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[37]  *Harrington*, 131 S. Ct. at 784-785.

[38]  *Id.*

[39]  *Id.* (emphasis in original).

12

through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[40]

### A.  Failure to Secure Alexander's Right to Testify

Alexander claims that Chan failed to secure his right to testify.  According to Alexander, he repeatedly expressed interest in testifying but Chan gave responses such as, "no" and, "you can't testify."  Alexander also alleges that Chan did nothing to effectuate his requests to testify and was not prepared to put Alexander on the stand the day he requested to testify.  Alexander raised this issue before the trial court in a motion for a new trial and on direct appeal.  The California Court of Appeal rejected this claim, holding that it was, "[Alexander's] duty to assert his right to testify; he did not.  There is nothing in the record to demonstrate that he was prevented from doing so by counsel, nor does defendant point us to any compelling facts in that regard."[41]

In his Petition and Traverse to this Court Alexander reasserts the same claim he raised on direct appeal.  After reviewing the record, there is no evidence that Chan somehow prevented Alexander from testifying, speaking to the court about his desire to testify, or discharging his counsel.  Chan's statements to Alexander regarding Alexander's requests to testify were either a misstatement of the law, i.e., you cannot (are not allowed to) testify on your own behalf, or simply Chan's opinion that Alexander should not testify in this proceeding.  The trial court and

---

[40]  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[41]  *Alexander*, 2007 WL 2010993 at 3.  It is unclear whether Chan denied making these statements or clarified the context in which they were made.  Thus, this Court is left with the Court of Appeal's conclusion that these statements did not prevent Alexander from testifying.

Court of Appeal had the opportunity to review the context and testimony from the parties before determining the nature of these exchanges.[42]  The Court of Appeal determined that Chan's actions did not prevent Alexander from asserting his right to testify, and this Court must give that factual determination proper deference absent clear and convincing evidence to the contrary.[43]  Alexander has not met his burden by showing that he was somehow unable to speak to the court, prevented from discharging Chan, or not allowed to take the stand.

This Court also notes that Alexander refers to Chan's decision to not have him testify as an "unreasoned tactical decision."[44]  The California Court of Appeal rejected this argument, finding that the decision to not have Alexander testify was "a well-reasoned strategy to protect defendant from the very real risk of significant damage to his credibility if he were cross-examined regarding evidence that he had surreptitiously taken video of his own family members in the shower."[45]  Alexander has not addressed this matter, and this Court must agree with the Court of Appeal that the decision not to expose the jury to this piece of impeachment evidence was well reasoned.

In addition to being unable to show that Chan's performance was deficient, Alexander is unable to demonstrate the requisite prejudice.  "With respect to prejudice, a challenger must

---

[42]  Alexander raised this issue in a motion for a new trial and again on direct appeal.

[43]  On direct appeal reasonable minds may differ as to whether Chan should have adjusted his trial plan to accommodate Alexander's request to testify.  However, on collateral review, the decision of the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Harrington*, 131 S. Ct. at 785.

[44]  Petition, p. 20.

[45]  *Alexander*, 2007 WL 2010993 at 4.

demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[46] Alexander claims that he wanted to testify so he could tell the jury that "it didn't happen."[47]  Absent a more specific proffer and in light of the fact that the prosecution would have impeached Alexander with extremely damaging evidence, this Court cannot say that there is a reasonable probability that Alexander's testimony would have resulted in a different outcome.  Because Alexander has failed to show that the decision of the California Court of Appeal was contrary to clearly established federal law or involved an unreasonable determination of the facts, he is not entitled to relief on this ground.[48]

### B.  Failure to Recall Big P. for Impeachment Purposes

Alexander claims that Chan rendered ineffective assistance of counsel for his failure to recall Big P. for impeachment purposes.  According to the record:

> [A] juror notified the court of her concern that Big P., who was permitted to remain in the courtroom (over defense counsel's objection) during Little P.'s testimony, might be coaching her daughter.  After eliciting the juror's observations, the trial court and counsel had a lengthy discussion to determine how to appropriately handle the situation. [49]
>
> Among other things, counsel considered (1) whether the juror should be excused, (2) whether other jurors made the same observations, (3) whether to recall Big P. or Little P., or both, to inquire about the juror's observations, (4) whether the juror would need to be called to the stand in the event either witness denied coaching, possibly leading to a mistrial and (5) whether the remaining jurors should be questioned as to their observations. Pursuant to the agreement of counsel and the court, each juror was brought in individually and asked if they observed any conduct in the courtroom during Little P.'s

---

[46] *Harrington*, 131 S. Ct. at 787.

[47] Petition, p. 20.

[48] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[49] *Alexander*, 2007 WL 2010993 at 4.

testimony that caused them concern. They were unanimous in their denial of having observed anything noteworthy.

After the complaining juror was questioned further, the prosecution expressed doubt as to her ability to remain fair and impartial. Nonetheless, the court denied a request to discharge her for cause.  When asked whether the complaining juror should be instructed to disregard her observations, defense counsel rejected that proposition, noting that those observations "go[ ] to the victim of this case on cross-examination." No instruction was given, and trial continued with defense counsel electing not to recall either Big P. or Little P. for further questioning regarding the alleged coaching.[50]

Alexander claims that his defense counsel was ineffective for failing to recall Big P. and impeach her for coaching her daughter.  Alexander contends that had Chan recalled Big P. and she admitted to coaching her daughter, this would have been very helpful to his case. Alternatively, had Big P. denied coaching her daughter, Chan could have called the juror to contradict her, which very well could have resulted in a mistrial.  According to Alexander, both of these alternatives were more desirable than simply not addressing the matter.  Alexander raised this issue on direct appeal, and the Court of Appeal rejected it.  Specifically, the Court of Appeal held that:

> there is at least one clear satisfactory explanation for electing to proceed as defense counsel did: whether or not the allegation of coaching was true, chances are the complaining juror had some question as to the credibility of the testimony from both Big P. and Little P., a possibility that played clearly in defendant's favor. As the People aptly note, defendant "only needed one juror to have a reasonable doubt as to [defendant's] guilt," and it is possible defense counsel felt he had a better advantage by letting whatever doubt might exist work as it would.[51]

Under § 2254(d), a habeas court must determine what arguments or theories supported or, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

---

[50] *Id.*

[51] *Id.* at 5.

holding in a prior decision of this Court.[52]  In this case, the Court of Appeal determined that choosing to allow the juror who clearly had a questionable doubt as to the veracity of Little P.'s testimony remain on the jury was a reasonable decision, since only one juror needed to have a reasonable doubt as to defendant's guilt.  The court also noted that choosing to impeach Big P. could have resulted in a mistrial, which would not necessarily guarantee a better result for Alexander.

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[53]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[54]

Certainly, Alexander may have been better off had Chan decided to recall Big P. for impeachment purposes, however his failure to do so does not render his assistance ineffective; according to the Court of Appeal, Chan made a strategic decision to leave the juror on the panel and allow any doubts she had to work in Alexander's favor.  Thus, through the doubly deferential lens of the § 2254(d)(1) standard,[55] this Court cannot say that the decision of the

---

[52]  *Harrington*, 131 S. Ct. at 786.

[53]  *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[54]  466 U.S. at 689 (internal citations and quotation marks omitted).

[55]  *Knowles*, 129 S. Ct. at 1420 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Court of Appeal was contrary to clearly established federal law or involved an unreasonable determination of the facts.[56]

C.  Failure to Adequately Cross-examine Witnesses and Elicit Exculpatory Evidence

Finally, Alexander claims that Chan failed to adequately cross examine Big P. and Little P. and elicit exculpatory evidence from defense investigator Loc Ngo.  Each of these claims was raised on direct appeal and rejected by the Court of Appeal.

i.  Failure to Properly Cross-Examine Big P.

Alexander claims that Chan did not adequately cross-examine Big P. regarding prior inconsistent statements that Big P. made to the investigator in this case, Loc Ngo.  The Court of Appeal denied this claim, holding:

> First, defendant argues Big P. should have been cross-examined on her inability to recall prior statements to defense investigator Loc Ngo regarding the claim that defendant and Little P. were never left alone together. Certainly, had counsel done so, he would have risked clarification by Big P. tending to show periods of time that could not be accounted for, thus weakening defendant's case.
> Second, defendant contends Big P. should have been cross-examined on prior statements to Ngo regarding periods of time the alleged crimes "could not have occurred" because Little P. was still in Mexico or because Big P. was home on maternity leave or working day shifts only (contradicting Little P.'s testimony that some of the assaults occurred at night). Given that Little P. estimated her age at the time of the offense, and the fact that Linke then calculated the date of the offense from Little P.'s estimate, we do not find it appropriate to second-guess defense counsel's decision not to highlight an explainable discrepancy. Similarly, the record demonstrates that counsel spent a good deal of time cross-examining Big P. regarding her daily schedule over the course of several years and identifying the specific dates and times she was home versus work or school. Indeed, the testimony given by Big P. speaks for itself, demonstrating inconsistencies in defendant's version of the facts that he was never alone with the victim. Any additional focus by defense counsel might well have highlighted that fact. We will not second-guess counsel in that regard either.

---

[56] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

Third, defendant contends counsel never elicited testimony regarding Big P.'s prior statements to Ngo that Little P. had a habit of lying. The report prepared by Ngo reflects discrepancies in Little P.'s statements to police regarding the dates she was molested. As discussed above, the discrepancies are explainable as estimations of past events from a 10-year-old child. Ngo's report also contains statements by Big P. that Little P. "lies to me all the time" and "lies constantly," and cites the following incidents as examples: (1) Little P. told her mother she had been locked out of her foster home; (2) Little P. stole $5 from her foster mother but said one of the other children "had eaten the money"; (3) Little P. "told a lie when she said I knew what was going on. [Little] P. never told me about [defendant] touching her" and (4) Little P. lied about sneaking out of her room at night. Given that defense counsel was in the best position to assess both the credibility of Big P. on the stand and the reaction of the jurors to her testimony, it is possible he determined an in-depth examination regarding what appears to be a somewhat troubled, yet not uncommon, parent-adolescent relationship would neither be relevant nor helpful to defendant's overall case. We defer to counsel's reasonable tactical decisions in that regard. (Weaver, supra, 26 Cal.4th at p. 925.)

Fourth, defendant contends counsel should have elicited testimony to clear up any ambiguities regarding the time periods of Big P.'s employment and the date she purchased the Glenn Avenue house and further failed to obtain employment or school records in that regard. It bears repeating that a significant amount of time was spent by defense counsel and the prosecution questioning Big P. about dates and schedules related to where she lived and where and when she was employed. We cannot say that records of employment would have provided better evidence of those details than the testimony elicited from the witness herself.

Fifth, defendant faults counsel for failing to cross-examine Big P. regarding an incident in which Little P. took Big P.'s vibrator and was found masturbating, arguing that such evidence would tend to prove any injuries to Little P.'s genital area could have been self-inflicted. Without citing to the record, defendant argues Big P. "conceded that any reported injuries of 'Little' [P.]'s genitals all could have been self-inflicted." A review of Ngo's report belies that statement. Without mentioning the vibrator, Big P. reported that she came home early and caught Little P. in bed under the blankets with her pants "down around her ankles." From that, Big P. inferred the child was masturbating. Whether or not she was, there was no connection between that incident and the stolen vibrator.  Furthermore, according to testimony from expert Cathy Boyle, the photographs of Little P.'s vaginal area confirmed that her condition was consistent with penetration by either a finger or a penis, but not by masturbation or use of a five-inch long, one and one-half inch wide vibrator. Given that Big P. would not have been qualified as an expert to testify as to the physical impact to Little P. had she used a vibrator, we cannot fault defendant's attorney for omitting that subject matter during his examination of Big P.[57]

---

[57] *Alexander*, 2007 WL 2010993 at 5-6.

It is clear that the Court of Appeal considered each possible ground for impeachment of Big P. and found that Chan could have had a tactical reason for not pursing these lines of questioning.  In his petition to this Court, Alexander simply re-raises the same arguments that he made to the California courts.  Aside from making conclusory statements that the Court of Appeal' decision was an unreasonable and not entitled to deference, Alexander has not provided a single Supreme Court case which supports his conclusion that Chan's reasoned decision not to pursue these theories of cross examination constituted ineffective assistance of counsel. Accordingly, this Court cannot say that the decision of the Court of Appeal was contrary to clearly established federal law or involved an unreasonable determination of the facts.[58]

### ii.  Failure to Cross-Examine Little P

Alexander claims that Chan's failure to not cross examine Little P. regarding her allegations against Alexander constituted ineffective assistance of counsel.  The Court of Appeal denied this claim, holding:

> Defendant contends that counsel failed to effectively cross-examine Little P. to elicit evidence to show she had made prior inconsistent statements. In eliciting testimony from an adolescent victim during trial, a delicate balance must be drawn between gentle prodding and aggressive fact-finding. While finding that line may be difficult, crossing it exposes defense counsel to the possibility that the jury might attribute his/her tactics negatively to the defendant himself. Without repeating our earlier discussion regarding the explainable inconsistencies in Little P.'s testimony, it is not difficult to imagine that defense counsel assessed his witness and her impact on the jury and determined defendant's case would not benefit from further prodding. Looking at nothing but a paper record in our review of the trial proceedings, we do not second-guess counsel's strategy in that regard.[59]

---

[58] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[59] *Alexander*, 2007 WL 2010993 at 6-7.

As with his previous claims, Alexander simply re-raises the same arguments that he made to the California courts and concludes that the Court of Appeal's rejection of his claim was an unreasonable and not entitled to deference.  Simply put, Alexander has failed to cite any Supreme Court case in support of his position that Chan made an unreasonable decision not cross examine an adolescent girl on her inconsistent statements regarding the nature of a sex act which took place when she was seven years old.  Again, this Court notes that under § 2254(d), it must determine what arguments or theories supported, or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[60]  As the Court of Appeal noted, it was reasonable for Chan not to risk alienating the jury by cross examining Little P. regarding inconsistencies in her testimony.  Because Alexander has failed to show that the decision of the California Court of Appeals was contrary to clearly established federal law or involved an unreasonable determination of the facts, he is not entitled to relief on this ground.[61]

### iii.  Failure to Call Investigator Loc Ngo

Alexander claims that Chan's failure to call Investigator Loc Ngo to testify on behalf of Alexander constituted ineffective assistance of counsel.  The Court of Appeals denied this claim, holding:

> Finally, defendant contends that counsel failed to call Ngo as a witness to elicit testimony regarding Little P.'s prior inconsistent statements and to rebut testimony of

---

[60] *Harrington*, 131 S. Ct. at 786.

[61] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

both Big P. and Little P. No doubt, Ngo could have been called to testify regarding the statements he obtained from both witnesses. Without an explanation from counsel regarding his decision not to do that, we can infer that one in his position might reasonably have concluded that, because the inconsistencies in Little P.'s testimony dealt mainly with her ability to recall certain details of the offense (specifically, the details of the oral copulation) between the time she gave the statement and trial, and because the inconsistencies in Big P.'s statements (regarding the specific places and periods of time her daughter could have been alone with the defendant) were sufficiently covered in direct and cross-examination of Big P., further inquiry and attempt to clarify those details through an investigator would perhaps lead to confusion rather than clarification of defendant's case.[62]

Again, this Court notes that under § 2254(d), it must determine what arguments or theories supported, or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[63]  According to the Court of Appeal, many of the inconsistencies in Big P.'s and Little P.'s respective testimonies were brought out on direct examination;[64] therefore, any attempt to further clarify these inconsistencies through the testimony of a third party could have lead to confusion of Alexander's case.

Certainly, duplicative testimony can be confusing to jurors and damaging to a defendant's case if it has the effect of highlighting undesirable details of the case.  Many of the inconsistencies Alexander hoped to elicit from Ngo's testimony were brought out on direct examination or easily explained.  Thus, Chan could have reasonably decided not to further allow Big P. to clarify her inconsistent statements or highlight the fact that Little P. could not remember the details of a sexual assault which took place when she was seven.

---

[62] *Alexander*, 2007 WL 2010993 at 7.

[63] *Harrington*, 131 S. Ct. at 786.

[64] In the case of Little P., inconsistences in her testimony were largely attributable to the fact that several years passed between the molests and trial.

Even if this Court were to find that Chan's failure to call Ngo constituted ineffective assistance of counsel, Alexander's claim would still fail because he cannot establish the requisite prejudice under *Strickland*.[65]  Accordingly, this Court cannot say that the decision of the Court of Appeals was contrary to clearly established federal law or involved an unreasonable determination of the facts.[66]

### iv.  Totality of Counsel's Errors and Prejudice

Finally, Alexander asserts that when all of Chan's errors are aggregated they support an overall claim of ineffective assistance of counsel.  In a separate heading, Alexander claims that he has shown prejudice as a result of Chan's errors.  The Court of Appeal has analyzed each of Alexander's claims of ineffective assistance of counsel and found that each of Chan's alleged errors were, or could have been, reasonable, tactical trial strategies.  This Court has agreed with the Court of Appeal's determination, and thus, there are no "errors" to aggregate.

Alexander's conclusion that he has established prejudice is also incorrect.  Alexander essentially argues that if Chan had made different tactical decisions, "a jury could have returned a verdict of something other than guilt" (sic).[67]  However, the proper analysis under *Strickland* requires that a challenger:

> demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's

---

[65] *Strickland*, 466 U.S. at 687.

[66] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[67]  Petition, p. 30.

errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[68]

Initially, this Court notes that since Alexander has failed to show deficient performance, his discussion of "prejudice" is moot.  Furthermore, Alexander does not even allege, let alone provide any sort of proof that the jury would have, not could have, reached a different result had Chan made different tactical decisions.  Alexander is not entitled to relief on this ground.

### III.  Trial Court Should Have Inquired and Given Advisement

In his third claim for relief, Alexander alleges that Chan's deficient assistance of counsel should have triggered a duty on the trial court to advise Alexander that he had a right to testify.  Respondent claims that this issue is unexhausted.   In his response, Respondent construed the issue as follows: "[Alexander] argues the trial court should have recognized [Alexander's] trial counsel was ineffective such that substitute counsel was warranted."[69]

### A.  Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts.[70]  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[71]  In this case, Alexander claims that this argument was presented to the California Supreme Court but no ruling was made.[72]  Because Respondent has

---

[68] *Harrington*, 131 S. Ct. at 787-88 (internal citations omitted).

[69] Answer, p. 14.

[70] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[71] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[72] Petition, p. 31.

misconstrued Alexander's argument, and Alexander claims that it was properly presented to the California Supreme Court, this Court will find that Alexander's claim has been properly exhausted.[73]

## B.  Duty to Advise

This claim is similar to Alexander's first claim that the trial court had notice that Alexander had a conflict with Chan and should have advised Alexander of his right to testify. Essentially, Alexander claims that Chan's performance was so deficient, that the trial court was placed on constructive notice that it needed to alert Alexander of his right to testify.  Alexander claims that he raised this issue on direct appeal, but that no ruling was made.  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[74]

This claim is without merit because Alexander has not cited a single United States Supreme Court decision in support of this position: that in certain circumstances, a trial court has a duty to inform a defendant of his right to testify.  In fact, several Courts of Appeal have held that a trial court has no duty to explain to the defendant that he or she has a right to testify or to

---

[73] This court also notes that it may deny a *habeas* claim on the merits, the failure to exhaust notwithstanding, when it is clear that the petition does not raise a colorable federal claim. *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  Since this claim is without merit, this Court may deny it even without finding that it has been exhausted.

[74] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

verify that the defendant who is not testifying has waived that right voluntarily.[75]  Accordingly, this Court cannot say that the assumed decision of the Court of Appeal was contrary to clearly established federal law as articulated by the Supreme Court or involved an unreasonable determination of the facts.[76]

---

[75]  *See, e.g.*, *United States v. Pennycooke*, 65 F.3d 9, 11 (3rd Cir. 1995); *United States v. Teague*, 953 F.2d at 1533 n. 8; *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990), *cert. denied*, 498 U.S. 1000 (1990); *United States v. Martinez*, 883 F.2d 750, 756-60 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991); *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir.1987); *United States v. Bernloehr*, 833 F.2d 749, 752 (8th Cir. 1987); *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983).

[76] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

<u>CONCLUSION AND ORDER</u>

Alexander is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.[77]

The Clerk of the Court is to enter judgment accordingly.

Dated: March 25, 2011

                                                    /s/ James K. Singleton, Jr.
                                               **JAMES K. SINGLETON, JR.**
                                                United States District Judge

---

[77] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.